**United States District Court**
For the Northern District of California

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4   DAVID BAKER,                              )   No. C 07-05438 SBA (PR)
                                             )
5            Petitioner,                      )   **ORDER DENYING PETITION FOR**
                                             )   **WRIT OF HABEAS CORPUS**
6   v.                                        )
                                             )
7   BEN CURRY,                                )
                                             )
8            Respondent.                      )
                                             )
9   _____ )

10                          **INTRODUCTION**

11        Petitioner David Baker, an inmate at the California State Prison in San Quentin, California,

12   filed this pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in which he

13   challenges the denial of parole by the California Board of Parole Hearings ("Board") in 2006.

14   Respondent Ben Curry opposes the petition.  Petitioner has filed a traverse.  The matter is now

15   submitted for the Court's consideration of the merits of the petition.  For the reasons discussed

16   below, the petition is DENIED.

17                      **PROCEDURAL BACKGROUND**

18        In 1989, Petitioner was convicted of first-degree murder and the use of a weapon in Santa

19   Clara County Superior Court, and he was sentenced to a term of twenty-seven years to life in state

20   prison.  In 2006, the Board found Petitioner unsuitable for parole at his first parole hearing, and

21   determined that he would not receive his next parole hearing for five years.  Petitioner challenged

22   the denial of parole in all three levels of the California courts.  The Santa Clara County Superior

23   Court denied the petition on March 12, 2007.  (Resp't Ex. 2.)  The California Court of Appeal and

24   the California Supreme Court summarily denied Petitioner's subsequent petitions on July 13, 2007,

25   and September 25, 2007, respectively.  (Resp't Exs. 5, 6.)  On October 24, 2007, Petitioner filed the

26   instant federal petition.

27        The Board set forth the following summary of the commitment offense based on reports

28   prepared for the parole hearing, in relevant part:

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10

On November 10, 1988,at approximately 10:00 p.m., victim Steven Taylor Shipman walked out of his parent's home towards his vehicle and was shot and killed by David Baker. [On] November 10, 1988, at approximately 8:00 p.m., Steven Shipman arrived at his parent's home.  Steven worked evenings with his father in his parent's garage doing computer monitor repairs.  At approsimately [sic] 10:00 p.m. Steven said goodbye to his mother and father, left the house and walked towards his car, which was parked across the street, directly in front of the parent's home.  Also located across the street from the parent's house is a seven foot high cinder block wall constructed as a year storage area for several businesses facing Stevens Creek Boulevard.  Located in this storage area was a large couch lying against the southeast corner, the wall closest to the Shipman residence.  From this vantage point David Baker fired at least nine shots from a .22 caliber semi-automatic rifle at Steven Shipman, who was standing approximately 30 feet away.  Shipman was hit by three bullets fired by David Baker's rifle.  At the sound of these gunshots Mr. and Mrs. Shipman ran outside to their son, who was now lying in the street.  Steven Shipman stated to his parents "I've been shot in the back, call the police."  These were the last words spoken by Steven Shipman.  William Shipman notified emergency personnel through 911.

. . .

11
12
13

[Steven and] his wife Starr had been married eight years.  However, during the last year, Starr had separated from Steven for a few months, during which time David Baker moved in with her.  Steven occasionally lived with [his parents] during that period.  For the last five months, Steven and Starr had been back together.  However, they believed that David Baker was still attempting to see Starr Shipman.

. . .

14
15
16
17
18
19
20

San Jose Officers re-interviewed Baker about his [previously] lying [to the police] as to the ownership of the gun.  Baker then reported that he had owned a rifle.  However, he said he sold it to someone prior to July 4th, 1988.  Baker was arrested by officers at this time.  He declined to make any further statements.  Tate Wiggins was re-interviewed by San Jose officers at which time he admitted that he had [previously] lied [to the police in supplying an alibi] for David Baker.  He then related that David had arrived at his house at 10:30 p.m. on the night of the shooting, telling Tate to lie to anyone who asked about him that night and to state that he had been with Tate all evening.  Keith Balster [Baker's roommate] was also re-interviewed, now stating that he recalled seeing a rifle case in David Baker's bedroom approximately one month before the shooting.

. . .

21
22

(Resp't Ex. 1C at 12-18.)  Petitioner admitted that the summary read by the Board was accurate. (Id. at 19.)

23

**STANDARD OF REVIEW**

24

**I.     AEDPA**

25

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may

26

grant a petition challenging a state conviction or sentence on the basis of a claim that was

27

"adjudicated on the merits" in state court only if the state court's adjudication of the claim:

28

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

United States District Court

For the Northern District of California

1   established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in

2   a decision that was based on an unreasonable determination of the facts in light of the evidence

3   presented in the State court proceeding."  28 U.S.C. § 2254(d).  Section 2254(d) applies to a habeas

4   petition from a state prisoner challenging the denial of parole.  See Sass v. Cal. Bd. of Prison Terms,

5   461 F.3d 1123, 1126-27 (9th Cir. 2006).

6       A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes

7   of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the

8   substance of the constitutional claim advanced, rather than denying the claim on the basis of a

9   procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393 F.3d

10  943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was

11  adjudicated on the merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

12      **A.    Section 2254(d)(1)**

13      Challenges to purely legal questions resolved by the state court are reviewed under

14  § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim

15  adjudicated on the merits in state court only if the state court adjudication resulted in a decision that

16  was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as

17  determined by the Supreme Court of the United States."  Williams (Terry) v. Taylor, 529 U.S. 362,

18  402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have

19  independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a

20  petitioner's allegations against both standards.  See Van Tran v. Lindsey, 212 F.3d 1143, 1149-50

21  (9th Cir. 2000), overruled on other grounds; Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

22

23      **1.    Clearly Established Federal Law**

24      "Clearly established federal law, as determined by the Supreme Court of the United States"

25  refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of

26  the relevant state-court decision." Williams, 529 U.S. at 412.  "Section 2254(d)(1) restricts the

27  source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may

28  not overrule a state court for simply holding a view different from its own, when the precedent from

United States District Court

For the Northern District of California

1  [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is

2  no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the

3  state court's decision cannot be contrary to, or an unreasonable application of, clearly-established

4  federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

5  The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether

6  constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the

7  rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are,

8  however, areas in which the Supreme Court has not established a clear or consistent path for courts

9  to follow in determining whether a particular event violates a constitutional right; in such an area, it

10  may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S.

11  at 64-65. When only the general principle is clearly established, it is the only law amenable to the

12  "contrary to" or "unreasonable application of" framework. See id. at 73.

13  Circuit decisions may still be relevant as persuasive authority to determine whether a

14  particular state court holding is an "unreasonable application" of Supreme Court precedent or to

15  assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert.

16  denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

17  

18  ### 2.    "Contrary to"

19  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

20  arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

21  state court decides a case differently than [the Supreme] Court has on a set of materially

22  indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that

23  correctly identifies the controlling Supreme Court framework and applies it to the facts of a

24  prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Id. at 406.

25  Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See

26  Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

27  ### 3.    "Unreasonable Application"

28  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

4

United States District Court
For the Northern District of California

1   state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

2   unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.

3          "[A] federal habeas court may not issue the writ simply because that court concludes in its

4   independent judgment that the relevant state-court decision applied clearly established federal law

5   erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411; accord

6   Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application

7   of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v.

8   Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to

9   "incorrect" application of law).

10         Evaluating whether a rule application was unreasonable requires considering the relevant

11  rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is

12  more general, the state courts have more leeway.  Yarborough v. Alvarado, 541 U.S. 652, 664

13  (2004).  Whether the state court's decision was unreasonable must be assessed in light of the record

14  that court had before it.  Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

15         The "objectively unreasonable" standard is not a clear error standard.  Andrade, 538 U.S. at

16  75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69

17  (acknowledging the overruling of Van Tran on this point).  After Andrade, "[t]he writ may not issue

18  simply because, in our determination, a state court's application of federal law was erroneous, clearly

19  or otherwise.  While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it

20  denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously

21  afforded them."  Id.  In examining whether the state court decision was unreasonable, the inquiry

22  may require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d

23  1045, 1054 (9th Cir. 2003).

24         **B.     Section 2254(d)(2)**

25         A federal habeas court may grant the writ if it concludes that the state court's adjudication of

26  the claim "resulted in a decision that was based on an unreasonable determination of the facts in

27  light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An

28

5

United States District Court
For the Northern District of California

1   unreasonable determination of the facts occurs where the state court fails to consider and weigh

2   highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and

3   made part of the state court record.  Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A

4   district court must presume correct any determination of a factual issue made by a state court unless

5   the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. §

6   2254(e)(1).

7   **II.   California Law Governing Parole for Murderers**

8        A Board panel meets with an inmate one year before the prisoner's minimum eligible release

9   date "and shall normally set a parole release date . . . .  The release date shall be set in a manner that

10  will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to

11  the public, and that will comply with the sentencing rules that the Judicial Council may issue and

12  any sentencing information relevant to the setting of parole release dates."  Cal. Pen. Code §

13  3041(a).  Significantly, that statute also provides:  The panel shall set a release date,

14
15          unless it determines that the gravity of the current convicted offense or offenses,
            or the timing and gravity of current or past convicted offense or offenses, is such
16          that consideration of the public safety requires a more lengthy period of
            incarceration for this individual, and that a parole date, therefore, cannot be fixed
17          at this meeting.

18  Id. § 3041(b).

19       One of the implementing regulations, Title 15 of the California Code of Regulations, section

20  2401 provides:  "A parole date shall be denied if the prisoner is found unsuitable for parole under

21  Section 2402(c).  A parole date shall be set if the prisoner is found suitable for parole under Section

22  2402(d).  A parole date set under this article shall be set in a manner that provides uniform terms for

23  offenses of similar gravity and magnitude with respect to the threat to the public."  The regulation

24  also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on

25  parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and

26  denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

27  society if released from prison."  15 Cal. Code Regs. § 2402(a).

28       In making its determination, the Board may consider "[a]ll relevant, reliable information

United States District Court

For the Northern District of California

1  available," including,

2      the circumstances of the prisoner's social history; past and present mental state;
3      past criminal history, including involvement in other criminal misconduct which
    is reliably documented; the base and other commitment offenses, including
4      behavior before, during and after the crime; past and present attitude toward the
    crime; any conditions of treatment or control, including the use of special
5      conditions under which the prisoner may safely be released to the community;
    and any other information which bears on the prisoner's suitability for release.
6      Circumstances which taken alone may not firmly establish unsuitability for parole
    may contribute to a pattern which results in finding of unsuitability.

7  Id. § 2402(b).

8      Circumstances tending to show unsuitability for parole include the nature of the commitment

9  offense, and consideration of whether "[t]he prisoner committed the offense in an especially heinous,

10 atrocious or cruel manner."  Id. § 2281(c).  This includes consideration of the number of victims,

11 whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim

12 was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out

13 in a manner which demonstrates an exceptionally callous disregard for human suffering," and

14 whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense."  Id.

15 Other circumstances tending to show unsuitability for parole are a previous record of violence, an

16 unstable social history, previous sadistic sexual offenses, a history of severe mental health problems

17 related to the offense, and serious misconduct in prison or jail.  See id.

18     Circumstances tending to support a finding of suitability for parole include no juvenile

19 record, a stable social history, signs of remorse, that the crime was committed as a result of

20 significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism

21

22 due to the prisoner's present age, that the prisoner has made realistic plans for release or has

23 developed marketable skills that can be put to use upon release, and that the prisoner's institutional

24 activities indicate an enhanced ability to function within the law upon release.  See id. § 2281(d).

25     The regulations also contain a matrix of suggested base terms that prisoners with

26 indeterminate sentences should serve before they are released on parole.  The matrix provides three

27 choices of suggested "base terms" for several categories of crimes.  See 15 Cal. Code  Regs. § 2403.

28 If, as in Petitioner's case, the base offense is one count of first-degree murder with the use of a

United States District Court

For the Northern District of California

1  dangerous weapon (firearm), the matrix of base terms ranges from a low of 29-31 years, to a high of

2  30-32 years, depending on some of the facts of the crime.[1]  See id. § 2403(b).  Although the matrix is

3  to be used to establish a base term, this occurs only once the prisoner has been found suitable for

4  parole.  See id. § 2403(a).

5       The statutory scheme places individual suitability for parole above a prisoner's expectancy in

6  early setting of a fixed date designed to ensure term uniformity.  In re Dannenberg, 34 Cal.4th 1061,

7  1070-71 (2005).

8

9       While subdivision (a) of section 3041 states that indeterminate life (i.e., life-
       maximum) sentences should "normally" receive "uniform" parole dates for similar
10      crimes, subdivision (b) provides that this policy applies "*unless* [the Board]
       determines" that a release date cannot presently be set because the particular
11      offender's crime and/or criminal history raise "*public safety*" concerns requiring
       further indefinite incarceration.  (Italics added.)  Nothing in the statute states or
12      suggests that the Board must evaluate the case under standards of term uniformity
       before exercising its authority to deny a parole date on the grounds the particular
13      offender's criminality presents a *continuing public danger*.

14 Id. at 1070 (emphasis, brackets and parenthesis in original).  Indeed, the very regulation that

15 includes the matrix states that "[t]he panel shall set a base term for each life prisoner who is found

16 suitable for parole."  15 Cal. Code Regs. § 2403(a) (emphasis added).  "[T]he Board, exercising its

17 traditional broad discretion, may protect public safety in each discrete case by considering the

18 dangerous implications of a life-maximum prisoner's crime individually."  Dannenberg, 34 Cal. 4th

19 at 1071 (emphasis added).

20      The California Supreme Court's determination of state law is binding in this federal habeas

21 action.  See Hicks v. Feiock, 485 U.S. 624, 629 (1988).

22                                      **DISCUSSION**

23      Petitioner's grounds for federal habeas relief are that (1) he has a liberty interest in release on

24

25      [1] One axis of the matrix concerns the relationship between murderer and victim and the
other axis of the matrix concerns the circumstances of the murder.  The choices on the axis for the
26 relationship of murderer and victim are "participating victim," "prior relationship," "no prior
relationship," and "threat to public order or murder for hire."  The choices on the axis for the
27 circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or
"torture."  Each of the choices are further defined in the matrix.  See 15 Cal. Code Regs. § 2403(b).
28

United States District Court

For the Northern District of California

1   parole that is protected by due process and that was violated by the Board's denial of parole; (2) his

2   right to due process was violated because neither the commitment offense or any other evidence

3   demonstrated his current dangerousness; and (3) the Board abused its discretion and violated

4   Petitioner's right to due process by relying upon factual findings not supported by "some evidence."

5   As all of Petitioner's claim asserts a violation of due process based on insufficient evidence to

6   support the Board's decision, the claims will be addressed together.

7           The Due Process Clause does not, by itself, entitle a prisoner to release on parole in the

8   absence of some evidence of his or her current dangerousness.  Hayward v. Marshall, 603 F.3d 546,

9   555, 561 (9th Cir. 2010) (en banc).  Under California law, however, "some evidence" of current

10  dangerousness is required in order to deny parole.  Id. at 562 (citing In re Lawrence, 44 Cal.4th

11  1181, 1205-06 (2008) and In re Shaputis, 44 Cal.4th 1241 (2008)).  Petitioner is correct that this

12  requirement gives California prisoners a liberty interest protected by the federal constitutional

13  guarantee of due process in release on parole in the absence of "some evidence" of their current

14  dangerousness.  Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) (citing Hayward, 603 F.3d at

15  561-64); Pearson v. Muntz, 606 F.3d 606, 609-10 (9th Cir. 2010) (per curiam) (also citing Hayward,

16  603 F.3d at 562-63).

17

18          When a federal habeas court in this circuit is faced with a claim by a California prisoner that

19  their right to due process was violated because the denial of parole was not supported by "some

20  evidence," the court "need only decide whether the California judicial decision approving the

21  governor's decision rejecting parole was an 'unreasonable application'[] of the California 'some

22  evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the

23  evidence.'" Hayward, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)); Cooke, 609 F.3d at

24  1209.  California's "some evidence" requirement was summarized in Hayward as follows:

25          As a matter of California law, 'the paramount consideration for both the Board and
            the Governor under the governing statutes is whether the inmate currently poses a
26          threat to public safety.'  There must be 'some evidence' of such a threat, and an
            aggravated offense 'does not, in every case, provide evidence that the inmate is a
27          current threat to public safety.'  The prisoner's aggravated offense does not establish
            current dangerousness 'unless the record also establishes that something in the
28          prisoner's pre- or post- incarceration history, or his or her current demeanor and

                                                      9

mental state' supports the inference of dangerousness.  Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, 'a current threat to public safety.'

Hayward, 603 F.3d at 562 (quoting Lawrence, 44 Cal.4th. at 1191, 1210-14); see Cooke, 609 F.3d at 1213-14 (describing California's "some evidence" requirement).

Here, there was certainly evidence to support the Board's finding that the commitment offense was "cruel" and "callous" and demonstrates an exceptionally callous disregard for human suffering" insofar as Petitioner premeditated the killing, waited for the victim with a loaded rifle, fired nine shots from a rifle in a residential area where others might have been shot, shot the victim three times in the back, left him bleeding in the street, and subsequently lied to and told his friend to lie to the police.  (Resp't Ex. 1C at 104-07.)  Under California law, such a brutal killing alone can amount to "some evidence" of current dangerousness because at the time of the parole decision Petitioner was well short of the suggested base term of his sentence – he had only served nineteen years of his sentence of twenty-seven years to life.  Cf. Lawrence, 44 Cal.4th at 1211 (holding that circumstances of commitment offense alone are "rarely" sufficient to deny parole after inmate has served his base term).  Nevertheless, contrary to Petitioner's contention, the denial of parole was based on other evidence of his current dangerousness in addition to the facts of his commitment offense.  There was evidence that Petitioner was living both an illegal and unstable lifestyle in buying, using and selling drugs.  (Resp't Ex. 1C at 108-09.)  To be sure, there was evidence of Petitioner's positive steps in prison, including only one serious disciplinary violation in eighteen years, his participation in a number of self-help, drug abuse, and vocational programs, and his good parole plans.  (Id. at 109-14.)  Notwithstanding this evidence, the commitment offense and Petitioner's unstable and illegal lifestyle prior to committing the murder constitutes "some evidence" under California law that Petitioner would be a danger to society if paroled at his 2006 hearing.

Consequently, the state courts, in upholding the Board's decision, reasonably applied California's "some evidence" requirement and reasonably determined the facts in light of the evidence in the record.  See Hayward, 603 F.3d at 563.  The state courts' denial of Petitioner's federal due process claims was neither contrary to nor an unreasonable application of clearly

**United States District Court**
For the Northern District of California

1  established federal law, and Petitioner is not entitled to habeas relief on his claims.

2  **CONCLUSION**

3  The petition for a writ of habeas corpus is DENIED.

4  Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule

5  on whether a petitioner is entitled to a certificate of appealability in the same order in which the

6  petition is denied.  Petitioner has failed to make a substantial showing that his claims amounted to a

7  denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his

8  claim debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Consequently, no

9  certificate of appealability is warranted in this case.

10  The Clerk of the Court shall enter judgment in accordance with this Order, terminate all

11  pending motions, and close the file.

12  IT IS SO ORDERED.

13  DATED: 9/15/10

14  _____
SAUNDRA BROWN ARMSTRONG
United States District Judge

15

16

17

18

19

20

21

22  UNITED STATES DISTRICT COURT

23  FOR THE
NORTHERN DISTRICT OF CALIFORNIA

24

25  DAVID BAKER,

26  Plaintiff,                           Case Number: CV07-05438 SBA

27  v.                                   **CERTIFICATE OF SERVICE**

28  BEN CURRY et al,

**United States District Court**
For the Northern District of California

1          Defendant.

2

3   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.

4

5   That on September 15, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said
    copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
    envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle

6   located in the Clerk's office.

7

8

9   David Baker E-15715
    California State Prison - San Quentin

10  San Quentin, CA 93964

11
    Dated: September 15, 2010

12                                    Richard W. Wieking, Clerk
                                      By: LISA R CLARK, Deputy Clerk

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

P:\PRO-SE\SBA\HC.07\Baker5438.denyHC.wpd                12